## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          )
                                      )
          v.                  )      Case No. 1306022016
                                      )
ALEXANDER L. MURRAY,       )
                                      )
         Defendant.        )

Submitted:     July 24, 2014
Decided:       August 22, 2014

Danielle J. Brennan                         James M. Stiller, Jr.
Deputy Attorney General              Schwartz & Schwartz
820 N. French Street, 7th Floor       1140 South State Street
Wilmington, DE 19801              Dover, DE 19901
      *Attorney for the State of Delaware*            *Attorney for Defendant*

## OPINION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS

On June 24, 2013, Defendant Alexander L. Murray (hereinafter "Defendant") was arrested and charged with Driving Under the Influence of Alcohol pursuant to 21 *Del. C.* § 4177 and with Failure to have Insurance Identification in Possession pursuant to 21 *Del C.* § 2118. On October 2, 2013, Defendant timely filed a Motion to Suppress all evidence gathered subsequent to the initial stop on the basis that the arresting officer lacked both reasonable articulable suspicion for the stop and probable cause for the arrest. The Court held a hearing on the Motion on April 17, 2014, and reserved decision. This is the Court's decision on Defendant's Motion.

## FACTS AND PROCEDURAL HISTORY

The State's sole witness at the hearing was Trooper Kevin Backer ("Trooper Backer") of the Delaware State Police. The following are the facts as the Court finds them. On June 24, 2013, at approximately 8:55 p.m., Trooper Backer was directing traffic and had closed off a turn lane by parking his marked patrol car in the lane. Trooper Backer activated his emergency lights, and placed multiple flares in the lane. As Trooper Backer was moving to replace some of the flares, a 2010 Volkswagen drove into the closed turn lane and came to a sudden stop. Trooper Backer approached the vehicle and identified the driver as Defendant, who stated, "Sorry, I f----d up." Trooper Backer immediately detected a strong odor of alcohol coming from Defendant, and noticed that Defendant had bloodshot, glassy eyes and a flushed face. Trooper Backer directed Defendant to pull into the nearby Exxon gas station, because there was heavy traffic on the street.

Once at the station, Trooper Backer instructed Defendant to exit the vehicle. Defendant used his vehicle door for balance, but otherwise complied with instructions. Trooper Backer had Defendant perform multiple field sobriety tests, beginning with an alphabet test. Defendant recited the letters quickly and was swaying during the test, but Trooper Backer did not notice any other issues with his performance. Next, Trooper Backer administered a counting test, instructing Defendant to count backward from 68 to 53. Defendant skipped 61 and 60, counted to 50, and then stated the number 48. Following that test, Trooper Backer administered the one-leg stand and walk-and-turn tests. Trooper Backer noticed that Defendant had significant balance issues and performed poorly on both tests. At the conclusion of the tests, Trooper Backer took Defendant to the police station.[1]

---

[1] Although Defendant's post-hearing brief references an intoxilyzer test, which is impliedly one element of the present Motion, there was no testimony elicited at the hearing pertaining to any events following the field sobriety tests.

## LEGAL STANDARD

On a Motion to Suppress, the State bears the burden to prove the legality and the reasonableness of the underlying stop and subsequent arrest by a preponderance of the evidence.[2] To justify an initial stop, a police officer must have a reasonable articulable suspicion that the defendant "is committing, has committed, or is about to commit a crime."[3] "Reasonable suspicion is defined as the officer's 'ability to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonable warrants the intrusion.'"[4]

In order to arrest an individual, a police officer must be able to demonstrate probable cause, which exists in the totality of the circumstance in accordance with the experience and training of the arresting officer.[5] "An officer has probable cause when he has information which would cause a reasonable person to believe that such a crime has taken place."[6]

## DISCUSSION

### REASONABLE ARTICULABLE SUSPICION

An officer who witnesses a traffic violation has met the threshold for a finding of reasonable articulable suspicion.[7] "A traffic violation combined with odor of alcohol does not alone constitute probable cause to arrest for DUI, but may amount to reasonable suspicion of DUI and justify a request to perform [field] tests."[8] In this matter, Defendant entered into a lane that had been clearly

---

[2] *State v. Anderson*, 2010 WL 4056130 at *3 (Del. Super. Oct. 14, 2010).
[3] *State v. Babb*, 2012 WL 2152080 at *2 (Del. Super. Jun. 13, 2012).
[4] *Id.* (citing *Holden v. State*, 23 A.3d 843, 847 (Del. 2011)(quoting *State v. Henderson*, 892 A.2d 1061, 1064-65 (Del. 2006)).
[5] *Miller v. State*, 4 A.3d 371 (Del. 2010).
[6] *Evon v. State*, 1999 WL 743435, at *3 (Del. Super. Jul. 26, 1999).
[7] *Brown v. State*, 2009 WL 659070 (Del. Super. Mar. 13, 2009).
[8] *Mulholland*, 2013 WL 3131642, at *4 (Del. Com. Pl. June 14, 2013); *see Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

closed to traffic. Trooper Backer, as a result, approached the vehicle and detected a strong odor of alcohol emanating from Defendant. Although Defendant argues that Trooper Backer could not discern the odor of alcohol in the presence of heavy, slow-moving traffic, the Court disagrees.[9] The State has therefore demonstrated that Trooper Backer had the necessary reasonable articulable suspicion to perform a traffic stop and subsequent DUI investigation.

## PROBABLE CAUSE

In his Motion, Defendant contends that the Court should not give weight to certain factors when determining whether probable cause existed. The Court will review each of Defendant's contentions in turn.

Defendant first argues that the Court cannot consider his erratic driving as a factor in the Court's probable cause analysis because Defendant's driving was merely a mistake. The Court disagrees and finds that Defendant's inability to recognize a lane closure marked by emergency lights on Trooper Backer's vehicle and flares is a factor to be given weight.

Second, Defendant contends that Trooper Backer could not have detected a strong odor of alcohol while surrounded by the exhaust emitted by a large quantity of slow-moving vehicles. The Court does not find this argument persuasive and will thus give weight to Trooper Backer's detection of a strong odor of alcohol.

Next, Defendant argues that the Court should not give weight to his bloodshot and glassy eyes because Defendant made contact with Trooper Backer at 8:55 p.m., and under *Mulholland*,

---

[9] In his closing argument, defense counsel admitted that if the Court finds that Trooper Backer was able to detect a strong odor of alcohol, then reasonable articulable suspicion has been met. "If the Court determines that Backer did actually and correctly smell the strong odor of an alcoholic beverage on Defendant's breath upon first encountering him, Defense acknowledges that that factor alone would have established RAS to investigate Defendant for DUI." Def. Br. p 3.

"bloodshot eyes at midnight" do not support a finding of probable cause.[10] While bloodshot eyes on their own may simply indicate a lack of sleep or other innocent factors, the police and the Court are not required to disregard the condition of Defendant's eyes just because it may be nighttime. The Court will therefore give weight to this factor.

The Court will give weight to Defendant's speech. Defendant's speech was slurred and it was rapid when he was attempting to complete the alphabet test. The Court will also give weight to Defendant's failure to maintain his balance when he got out of his vehicle and when he participated in the field tests.

With respect to Defendant's performance on the counting, walk-and-turn, and one-leg stand tests, the Court will consider the results in its probable cause analysis. The Court will also consider Defendant's passing performance on the alphabet test. Whether the results of the tests may be entered into evidence at trial is not at issue in this Motion.[11]

The Court will therefore consider the following factors, within the totality of the circumstances, to determine whether Trooper Backer had probable cause to obtain a breath sample to determine Defendant's blood alcohol during his arrest for DUI: 1) erratic driving; 2) strong odor of alcohol; 3) bloodshot, glassy eyes; 4) rapid and slurred speech; 5) lack of balance; and 6) performances on the alphabet, counting, walk-and-turn, and one-leg stand tests.

---

[10] *Mulholland*, 2013 WL 3131642, at *5.

[11] When testifying, Trooper Backer had significant difficulties recounting the clues and the scientific percentages associated with the clues. His testimony also indicates that he did not follow all NHTSA standards for administering these tests. *See State v. Lanouette*, 2012 WL 4857820, at *8 (Del. Com. Pl. Aug. 27, 2012) ("While the Court recognizes that there may be deficiencies in the way Corporal Lafate either performed the tests or recalled in his testimony how the tests were performed, the Court finds that these deficiencies are not enough to disqualify the tests' results from consideration in the probable cause determination"); *see State v. Ministero*, 2006 WL 3844201, at *2 (Del. Com. Pl. Dec. 21, 2006).

Alone, the factors do not amount to probable cause, but under the totality of the circumstances, the six factors combined with Trooper Backer's experience, observations, and training, provided sufficient support for a finding of probable cause in this matter.[12]

## CONCLUSION

For the forgoing reasons, I find that the State has proved, by a preponderance of the evidence, that Trooper Backer had reasonable articulable suspicion to stop Defendant and that Trooper Backer furthermore had probable cause to obtain a breath sample and to arrest Defendant. Accordingly, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED THIS 22nd DAY OF AUGUST 2014.**

by SKR

The Honorable Carl C. Danberg,
Judge

---

[12] The Court reviewed other decisions relating to probable cause for a DUI offense, and determined that the factors present here fall within the boundaries of a finding of probable cause. *See, e.g.,* *Miller v. State*, 4 A.3d 371, 374-75 (Del. 2010) (probable cause existed where there was an odor of alcohol, glassy and watery eyes, failed walk-and-turn and one-leg stand tests, and defendant admitted to drinking); *Bease v. State*, 884 A.2d 495, 498 (Del. 2005) (Court found probable cause with factors such as failure on the alphabet test, traffic violation, odor of alcohol, rapid speech, admission to drinking, and bloodshot and glassy eyes); *State v. Lanouette*, 212 WL 4857820, at *9 (Del. Com. Pl. Aug. 27, 2012) (probable cause existed when there was a traffic violation, bloodshot and glassy eyes, an odor of alcohol, an admission to drinking, and failed field tests.